

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------

SIERRA CLUB, INC.,
        Plaintiff,

v.

NICOLIA READY MIX, INC.; NICOLIA CONCRETE
PRODUCTS, INC.; NICOLOCK PAVING STONES,
LLC; and ROBERT L. NICOLIA,
        Defendant.

---------------------------------------------------------------------

Case No. 2:17-CV-05587

~~(PROPOSED)~~
**AMENDED**
**CONSENT DECREE**

WHEREAS, Plaintiff Sierra Club, Inc. ("Sierra Club") is a not-for-profit environmental organization organized under the laws of the state of California, with its principal place of business in Oakland, California;

WHEREAS, Defendant Nicolia Ready Mix, Inc. is a corporation formed under the laws of the State of New York;

WHEREAS, Defendant Nicolia Concrete Products, Inc. is a corporation formed under the laws of the State of New York;

WHEREAS, Defendant Nicolock Paving Stones, LLC is a limited liability company formed under the laws of the State of New York;

WHEREAS, Defendant Robert L. Nicolia is an officer of Defendant Nicolia Ready Mix, Inc. and is the chief executive officer of Defendant Nicolia Concrete Products, Inc. and Defendant Nicolock Paving Stones, LLC;

WHEREAS, Defendants own and/or operate and/or participate in the operation of the following facilities:

- 615 Cord Avenue, Lindenhurst, NY 11757, uniquely identified as District 100, Section 215, Block 2, Lot 42.001 in the Town of Babylon, Suffolk County, NY (hereinafter "Facility A");

- 200 Henry Street, Lindenhurst, NY 11757, uniquely identified as District 100, Section 215, Block 2, Lot 003.000 in the Town of Babylon, Suffolk County, NY (hereinafter "Facility B");

- 3896 Long Beach Road, Island Park, NY 11558, uniquely identified as Section 43, Block 404 in the Town of Hempstead, Nassau County, NY (hereinafter "Facility C");

- 640 Muncy Avenue, Lindenhurst, NY 11757, uniquely identified as District 100, Section 215, Block 1, Lot 18.00 in the Town of Babylon, Suffolk County, NY (hereinafter "Facility D");

- 25 Montclair Avenue, St. James, NY 11780, uniquely identified as District 800 Section 109 Block 2 Lots 8, 9.1, 9.5, 10.2, 10.3 in the Town of Smithtown, Suffolk County, NY (hereinafter "Facility E");

- 43 Colin Drive, Shirley, NY 11967, uniquely identified as District 200 Section 641 Block 1 Lots 13 through 21 in the Town of Brookhaven, Suffolk County, NY (hereinafter "Facility F");

- 86 Kroemer Avenue, Riverhead, NY 11901, uniquely identified as District 600 Section 119 Block 1 Lot 29 in the Town of Riverhead, Suffolk County, NY (hereinafter "Facility G"); and

- 482 Grand Boulevard, Westbury, NY 11590, uniquely identified as Section 11 Block 330 Lot 10 in the Town of North Hempstead, Suffolk County, NY (hereinafter "Facility H");

WHEREAS, Facilities A, B, C, and D operate under a primary Standard Industrial Classification ("SIC") Code Group 32 and discharge stormwater to waters of the United States, namely the Great South Bay and its tributaries, and therefore any discharge of stormwater associated with industrial activities from the Facilities is subject to the General Permit for the Discharge of Stormwater Associated with Industrial Activity ("General Permit") issued by the New York State Department of Environmental Conservation ("DEC"), Permit No. GP-0-17-004;

WHEREAS, Sierra Club sent a notice of intent to sue Defendants (the "Notice Letter") on June 29, 2017 and filed this action on September 25, 2017, alleging violations of 33 U.S.C. §§ 1311(a) and 1342 of the Clean Water Act ("CWA") at Facilities A, B, C, and D seeking declaratory and injunctive relief, civil penalties, and reasonable attorneys' fees and costs;

WHEREAS, Sierra Club alleged in its complaint (the "Complaint") and in its earlier Notice Letter that Defendants have violated and continue to violate CWA Section 33 U.S.C. §§ 1311(a) and 1342 by, inter alia, discharging polluted stormwater associated with industrial activity without coverage under the General Permit and by failing to comply with the conditions of the General Permit at Facilities A, B, C, and D;

WHEREAS, Sierra Club and Defendants negotiated a settlement to this action by way of Consent Decree, which was reviewed and approved by the United States as required by the CWA, and which was entered by the Court on November 20, 2018 (ECF 31) ("CD I");

WHEREAS, Defendants agreed in CD I, ¶¶ 8–13, to submit a Notice of Intent to obtain coverage under the General Permit at Facilities A, B, and C no later than December 11, 2018; to provide Sierra Club with prompt written notice of such submission; to provide DEC's Letter of Acknowledgement within fifteen (15) days of receipt thereof; to implement Stormwater Pollution Prevention Plans ("SWPPPs"), and to operate Facilities A, B, and C in accordance with those SWPPPs and with the terms of the General Permit and the CWA; and to maintain in good

working order all stormwater collection and treatment systems then installed or to be installed at Facilities A, B, and C pursuant to the SWPPPs and CD I, including but not limited to good housekeeping measures;

WHEREAS, Defendants agreed in CD I, ¶ 14, to submit a No Exposure Certification for Facility D no later than December 11, 2018;

WHEREAS, Defendants agreed in CD I, ¶ 15, to conduct an assessment of Facilities E, F, G, and H to determine whether those facilities require permitting under the CWA for industrial stormwater discharges; to provide Sierra Club with a written summary, prepared by an environmental engineering firm, of each assessment no later than February 20, 2019; to confer with Sierra Club in good faith to reach agreement as to whether Facilities E, F, G, and H required permit coverage; and to reach written agreement with Sierra Club as to whether Facilities E, F, G, and H required permit coverage within a reasonable timeframe, defined as "a timeframe commensurate with the number of SWPPPs that will need to be prepared";

WHEREAS, Sierra Club agreed in CD I, ¶ 11, not to sue Defendants in consideration of these agreements for a one-year period, i.e., until November 20, 2019, and further agreed to consent to a six-month extension upon request provided Defendants were diligently pursuing implementation of their SWPPPs;

WHEREAS, on February 20, 2020, Sierra Club informed the Court that Defendants had not complied with their obligations under CD I and were not responding to requests to meet and confer (ECF 32), whereupon the Court granted Sierra Club's motion to compel Defendants' appearance by May 1, 2020 (ECF 33; *E-Order* (Apr. 23, 2020)); whereafter Defendants did not appear by May 1, 2020;

WHEREAS, on June 18, 2020, Sierra Club moved to find Defendants in contempt of Court (ECF 35), which Sierra Club served upon Defendants (ECF 37–38), whereupon the Court ordered Defendants to respond by July 21, 2020 (*E-Order* (Jul. 14, 2020)) and August 7, 2020 (*E-Order* (Jul. 22, 2020)), whereafter Defendants did not appear by July 21 or August 6, 2020;

WHEREAS, on August 13, 2020, the Court ordered Defendants to show cause why Sierra Club's motion for contempt should not be granted by September 4, 2020 (*E-Order* (Aug. 13, 2020), which order was served upon Defendants by Sierra Club (ECF 42–43), whereafter Defendants did not appear by September 4, 2020;

WHEREAS, on September 17, 2020, the Court found Defendants in contempt of Court and ordered Defendants to meet and confer with Sierra Club to negotiate an Amended Consent Decree and to pay Sierra Club's attorneys' fees and costs incurred to enforce the Court's previous orders (ECF 44) ("Contempt Order"), which order was served upon Defendants by Sierra Club (ECF 45–46);

WHEREAS, on October 20, 2020, Sierra Club and Defendants (together, the "Parties," or individually, "Party") informed the Court that counsel for Defendants had been retained (ECF 47) and, on October 28, 2020, counsel for Defendants formally appeared (ECF 49), whereupon the

Parties jointly sought and were granted extensions to jointly assess Facilities A, B, C, D, E, F, G, and H, develop SWPPPs, obtain permit coverage as necessary, and negotiate an Amended Consent Decree on that basis to resolve the Contempt Order (*E-Order* (Oct. 22, 2020); *E-Order* (Nov. 10, 2020); *E-Order* (Mar. 9, 2021); *E-Order* (Nov. 5, 2021));

WHEREAS, without any concession or admission by Defendants that they have violated the CWA, or any concession or admission by Sierra Club that Defendants' implementation of the measures listed below will prevent all discharge of polluted stormwater or will assure compliance with the terms and conditions of the General Permit or the CWA, the Parties agree that it is in their mutual interest to resolve this matter without the taking of evidence or findings of fact or law, and to avoid prolonged and costly litigation; and

WHEREAS, Defendants submitted Notices of Intent for coverage under the General Permit at Facilities A, B, and C, and the Parties have jointly developed and reached agreement as to the adequacy of the SWPPPs attached hereto as Attachments A, B, and C respectively, which are incorporated herein by reference;

WHEREAS, Defendants submitted a No Exposure Certificate for Facility D, certifying that stormwater is not exposed to industrial activities at Facility D and therefore do not require coverage under the General Permit at Facility D;

WHEREAS, the Parties have jointly assessed Facilities E, F, G, and H and agree that coverage under the General Permit is not required at Facilities E, F, G, and H; and

WHEREAS, this Amended Consent Decree shall be submitted to the United States Department of Justice and the United States Environmental Protection Agency for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c);

NOW, THEREFORE, without the trial of any issue of fact or law, upon consent of the Parties and upon consideration of the mutual promises contained herein,

**IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:**

**I.  DEFINED TERMS**

The defined terms set forth in the foregoing recitals are hereby incorporated into the body of this Amended Consent Decree and are made a part hereof.  Terms used in this Decree that are defined in the Clean Water Act and its implementing regulations shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  In addition, the following terms used in this Decree have the meaning set forth below:

1. **Effective Date**:  The date upon which this Amended Consent Decree is entered by the Court.

2. **Term of this Decree**:  The period beginning on the Effective Date and ending three (3) years from the Effective Date or until all affirmative duties under this Amended Consent

Decree are completed, whichever is later. For purposes of this provision, "affirmative duties" shall mean (1) the duty to provide reports, results, or other documents to Sierra Club under Paragraphs 13, 21, and 22 of this Decree; (2) the duty to provide a Memorandum under Paragraph 26 of this Decree in the event of a sampling exceedance; and (3) the duty to make the payments set forth in Section VI of this Decree.

3. **Defendants**:  All Defendants in this action, namely Nicolia Ready Mix, Inc.; Nicolia Concrete Products, Inc.; Nicolock Paving Stones, LLC; and Robert L. Nicolia.

4. **Agencies**: The United States Environmental Protection Agency and the United States Department of Justice.

5. **DEC**:  The New York Department of Environmental Conservation.

6. **CWA**:  The Federal Pollution Control Act, 33 U.S.C. § 1251 *et seq.*, commonly known as the Clean Water Act.

7. **General Permit**:  The General Permit for the Discharge of Stormwater Associated with Industrial Activity issued by the New York State Department of Environmental Conservation, Permit No. GP-0-17-004.

8. **SWPPP**:  A Stormwater Pollution Prevention Plan, as defined in the General Permit.

## II.   JURISDICTION AND VENUE

9. **Jurisdiction.**  Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (CWA jurisdiction).  Sierra Club has standing and has complied with the statutory notice requirements under the CWA, 33 U.S.C. § 1365(a)(1), and the corresponding regulations at 40 C.F.R. § 135.2.  An actual, justiciable controversy exists between Sierra Club and Defendants.  The requested relief is proper under 28 U.S.C. §§ 2201, 2202, and 33 U.S.C. § 1365(a).

10. **Venue.**  Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the events giving rise to this action occurred at Facilities A, B, C, D; in the Great South Bay watershed, navigable waters of the United States; and in Nassau and Suffolk Counties, all of which are located within this judicial district.

11. **Consent.**  For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and over Defendants.  For purposes of this Decree, Defendants consent to venue in this judicial district.

## III.   MAINTAINING COVERAGE UNDER THE GENERAL PERMIT

12. **Compliance with the General Permit.**  The current SWPPPs for Facilities A, B, and C are attached to this Amended Consent Decree as Exhibits A, B, and C respectively. Defendants will implement the attached SWPPPs at the Facility in compliance with the

5

terms of the General Permit, which is hereby incorporated into this Decree, and the CWA. A failure to adhere to the SWPPPs is a violation of this Decree. Further, should conditions change or new information become available to Defendants indicating that General Permit coverage is required at Facilities D, E, F, G, or H, Defendants shall promptly notify Sierra Club and seek such coverage.

13. **Implementation Reports.** Defendant shall provide Sierra Club with Implementation Reports for Facilities A, B, C, and D prepared by a qualified stormwater professional, attesting to implementation of their respective pollution controls within thirty (30) days of the Effective Date. The Reports shall include:
   a. A summary of newly-adopted management or housekeeping practices;
   b. As to Facilities A, B, and C, photographs of all structural control measures added or improved since Sierra Club's stormwater professional visited the Facilities on September 28–29, 2021;
   c. As to Facility D, photographs of all structural control measures and pollution control efforts made since April 2021, including clean-up of north retaining wall;
   d. If necessary, a revised SWPPP incorporating the final updates to stormwater controls at the Facility and removing temporary provisions;
   e. A certification that the professional visited the Facility in the month prior to submission of the Report;
   f. A certification that, during the professional's last visit, all structural measures described in the revised SWPPP were in good working order and all housekeeping measures appeared to be taking place.

14. **SWPPP Amendments.** If, during the Term of this Decree, Defendants amend a SWPPP, or are required to amend a SWPPP for any reason including but not limited to the reasons enumerated in the General Permit, Defendants shall provide written notice to Sierra Club within five (5) business days of the amendment and shall provide Sierra Club with all documents related to such amendment.

15. **Implemented Stormwater Controls.** Defendants shall maintain in good working order all stormwater collection and treatment systems and pollution control or mitigation systems currently installed or to be installed pursuant to this Decree, including but not limited to existing housekeeping measures.

## IV.   MONITORING PROGRAM

16. **Additional Monitoring.** In addition to the inspections, monitoring, and reporting required under the General Permit and set forth in the attached SWPPPs, Defendants agree to perform the following additional monitoring described herein during the Term of this Decree.

17. **Sampling Points.** The sampling points shall be those described in the SWPPPs for Facilities A, B, and C.

18. **Sampling Frequency.** During the first two (2) years of the Term of this Decree, as calculated from the Effective Date, Defendants will sample and analyze stormwater

6

discharges for applicable benchmarks from one qualifying storm event that results in discharge from any sampling point at Facilities A, B, and C once per quarter. Thereafter, if there is an exceedance at a given Facility in the prior six (6) months, Defendants will continue to sample and analyze stormwater discharges for applicable benchmarks once per quarter at that Facility.  If there are no exceedances at a given Facility in the prior six (6) months, sampling shall be conducted in accordance with the terms of the General Permit at that Facility.

19. **Sampling Methodology.**  Defendants will take samples at each sampling point in a manner that is consistent with the requirements and protocols set forth in the General Permit.  Defendants may report this sampling as part of the stormwater monitoring required by the General Permit.

20. **Recordkeeping.**  Defendants will comply with the reporting and recordkeeping requirements of the General Permit at Facilities A, B, C, and D.  Defendants shall maintain written documentation at Facilities A, B, C, and D describing all inspections and assessments required under applicable provisions of the General Permit or of this Decree.

21. **Results Sent to Sierra Club.**  Defendants will send to Sierra Club a copy of every inspection record, monitoring record, and sampling result taken at Facilities A, B, C, and D during the Term of this Decree within fourteen (14) days, unless an exceedance must be reported as provided in Section V.

22. **Provision of Documents to Sierra Club.**  During the Term of this Decree, Defendants shall provide Sierra Club with copies of any documents or correspondence related to discharges of pollution from Facilities A, B, C, and D to waterbodies or sewers of any kind or CWA compliance submitted to any governmental agency (including but not limited to the Agencies, the DEC, and relevant municipal and county authorities) within fourteen (14) days of such submission.  This includes, but is not limited to:
    a. Documents and correspondence related to Defendants obtaining, re-registering, or terminating NPDES permit coverage at any Facility;
    b. Documents and correspondence related to Defendants certifying no exposure of stormwater to industrial activity at any Facility;
    c. Annual Reports;
    d. Monitoring or sampling data;
    e. Revisions to the SWPPPs;
    f. Data related to discharges to the sanitary sewer system, if any; and
    g. Reports of spills or other incidents that may result in discharge of pollutants to a waterbody or sewer.

23. **Inspections.**  Defendants agree to grant site access to a qualified stormwater consultant acting on behalf of Sierra Club to inspect Facilities A, B, and C for compliance with the General Permit and this Decree up to once per Facility per year, as calculated from the Effective Date, during the Term of this Decree.  Sierra Club will provide at least ten (10) days' notice of a site visit.

In addition, Defendants agree to grant site access to a qualified stormwater consultant acting on behalf of Sierra Club to inspect Facilities A, B, and C during wet weather for compliance with the General Permit and the terms of this Decree once per Facility during the Term of this Decree.  Given the unreliability of weather forecasting, Sierra Club will provide at least five (5) days' notice that a wet weather site visit is being contemplated, with confirmation of the wet weather site visit given by 12:00PM the day before.  Sierra Club will prioritize wet weather site visits, making every effort to complete all wet weather site visits during the first year.  Sierra Club will not seek to conduct a routine site visit in the same year as a wet weather site visit unless compliance issues are identified during the wet weather site visit.

Site visits shall be conducted only during the Facilities' normal business hours.  No inspections shall be held on a weekend or a federal holiday.  To ensure the safety of both Sierra Club's representatives and Defendants' staff, the parties agree that Defendants' Director of Environmental Health and Safety, or a designated representative if the Director is not available, shall accompany Sierra Club's consultant during all site visits.  In addition, Sierra Club and its consultant shall comply with any safety regulations applicable to Facilities A, B, and C, respectively, including but not limited to wearing any necessary safety gear.  Defendants may also elect to have their own environmental consultant present during any site visits.

Sierra Club's consultant may collect samples of stormwater discharges and take photographs of the Facility.  Sierra Club will provide Defendants with notice of any noncompliance within ten (10) days of receipt of such information by Sierra Club.  Defendant does not through this process admit that the noncompliance alleged by Sierra Club has occurred, and Defendant retains the right to contest any alleged violations.

## V.   EXCEEDANCES AND VIOLATIONS

24. **Reporting Numeric Effluent Limitation Violations.**  Notwithstanding the annual reporting schedule set forth in Section IV, if at any point during the Term of this Decree the analytical results of any sample for any parameter exceeds any applicable numeric effluent limitation or benchmark monitoring cutoff concentration established in the General Permit, Defendants shall report the event to Sierra Club and provide the analytical results within five (5) business days of receiving the analytical results.

25. **Corrective Action.**  Where an effluent limitation or benchmark monitoring cutoff concentration is exceeded, or where Sierra Club provides Defendants notice of non-compliance, Defendants shall take responsive actions to improve stormwater management practices, including re-evaluating structural and non-structural best management practices and considering additional best management practices aimed at reducing pollutant levels observed in samples.  Within thirty (30) days of discovering such exceedance or non-compliance, Defendants shall provide Plaintiff with a Memorandum containing the following information:

   a.  Identification of any constituent that experienced an exceedance;

8

    b.   Explanation of the possible cause(s) and/or source(s) of the non-compliance; and

    c.   Explanation of Defendants' planned responsive actions.

Defendants shall complete all responsive actions within twelve (12) weeks of discovery, unless Sierra Club concurs to an extended timeline for completion. Any concurrence or failure to object by Sierra Club shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's stormwater into compliance with applicable water quality criteria or the CWA's technology-based standards requiring industrial stormwater discharges to be controlled to the level achievable by the best available technology economically available.

## VI.    PAYMENTS

26. **Environmental Benefit Payment ("EBP").** In lieu of any payment that could have been assessed as a penalty if the matter were tried, Defendants shall pay the sum of one hundred and seventy-five thousand dollars ($175,000) for use on projects relating to the reduction, mitigation, and/or remediation of the effects of stormwater pollution or environmental restoration of, or other benefit to, the Great South Bay, Peconic Bay, or Long Island Sound watersheds. The EBP shall be disbursed as follows:

| | |
|---|---|
| • Save The Great South Bay, Inc. | $25,000 |
| • The Gino Macchio Foundation | $25,000 |
| • GreenWave | $50,000 |
| • Lazy Point Farms (of the Moore Family Charitable Foundation) | $75,000 |

Defendants have placed the payment in escrow with Defendants' attorney; a copy of the check delivering said payment is attached hereto at Exhibit D. Defendants hereby authorize and instruct Defendants' attorney to transfer the payment to the EBP Recipient within five (5) business days of the Effective Date by check or electronic transfer. A check shall be sent via certified mail, or similar service with tracking. Defendants shall concurrently notify Sierra Club that payment has been sent to the EBP Recipient and provide the tracking number. None of this payment shall be disbursed to Sierra Club.

27. **Stipulated Additional EBP.** Should Defendants fail to perform a task or provide any required documentation to DEC or Sierra Club by the deadlines required by the General Permit or this Decree and fail to cure this breach within fourteen (14) days of being notified of same by Sierra Club, Defendant shall make an additional environmental benefit payment of one-thousand dollars ($1,000) for each missed deadline and each failure to provide documentation. Payments shall be made to Save the Great South Bay, Inc. for use on projects relating to the reduction, mitigation, and/or remediation of the effects of stormwater pollution or environmental restoration of, or other benefit to, the Great South Bay. Payments shall be made via certified check by certified mail, or similar service with tracking. Payment of each additional amount shall be due fourteen (14) days following each missed deadline. Defendants shall concurrently notify Sierra

Club, in writing, each time a payment is made and provide a copy of each check and the tracking number.  None of these payments shall be disbursed to Sierra Club.

28. **Fees, Costs, and Expenses.**  Defendants shall pay a sum of one hundred and seventy-five thousand dollars ($175,000) as full and complete satisfaction of Sierra Club's claims for attorneys' fees and costs incurred to date, including investigative and expert costs.  Defendants have placed the payment in escrow with Defendants' attorney; a copy of the check delivering said payment is attached hereto at Exhibit D.  Defendants hereby authorize and instruct Defendants' attorney to transfer the payment to Super Law Group within five (5) business days of the Effective Date by check or electronic transfer.  A check shall be sent via certified mail, or similar service with tracking and shall be payable to "Super Law Group, LLC Attorney Trust - IOLA".  Payments will be deposited in Super Law Group's IOLA Trust Account for the benefit of Sierra Club.

29. **Compliance Monitoring Fees – Stormwater Consultant.**  Sierra Club intends to engage the consulting services of a professional stormwater consultant to monitor Defendants' compliance with this Decree, to conduct site inspections, and, as necessary, for mediation assistance in connection with dispute resolution as set forth in Section X. Defendants agree to pay the reasonable fees and costs for this work in an amount not to exceed fifteen thousand dollars ($15,000) through the Term of this Decree.  Defendants have placed the payment in escrow with Defendants' attorney; a copy of the check delivering said payment is attached hereto at Exhibit D.  Defendants hereby authorize and instruct Defendants' attorney to transfer the payment to Super Law Group within five (5) business days of the Effective Date by check or electronic transfer.  A check shall be sent via certified mail, or similar service with tracking and shall be payable to "Super Law Group, LLC Attorney Trust - IOLA".  Payments will be deposited in Super Law Group's IOLA Trust Account for the benefit of Sierra Club.  Sierra Club shall present to Defendants an invoice for any payment they propose to take from this sum to cover compliance oversight costs.  Any funds not used during the Term of this Decree shall be refunded to Defendants.

30. **Compliance Monitoring Fees – Legal.**  Sierra Club will incur attorneys' fees to monitor Defendants' compliance with this Decree, including but not limited to fees incurred to collect documents and review Defendants' compliance with this Decree, discuss any potential changes to compliance requirements, participation in dispute resolution as set forth in Section X, and similar activities.  Defendants agree to pay reasonable fees for this work performed by Sierra Club's counsel in an amount not to exceed fifteen thousand dollars ($15,000) through the Term of this Decree.  Defendants have placed the payment in escrow with Defendants' attorney; a copy of the check delivering said payment is attached hereto at Exhibit D.  Defendants hereby authorize and instruct Defendants' attorney to transfer the payment to Super Law Group within five (5) business days of the Effective Date by check or electronic transfer.  A check shall be sent via certified mail, or similar service with tracking and shall be payable to "Super Law Group, LLC Attorney Trust - IOLA".  Payments will be deposited in Super Law Group's IOLA Trust Account for the benefit of Sierra Club.  Sierra Club shall present to Defendants an invoice for any payment they propose to take from this sum to

cover compliance oversight costs.  Any funds not used during the Term of this Decree shall be refunded to Defendants.

## VII.    EFFECT OF DECREE

31. **Sierra Club's Release of Liability.**  Upon Court approval and entry of this Amended Consent Decree, Sierra Club covenants not to sue and releases Defendants (including their representatives, assigns, agents, employees, officers, attorneys and consultants) from any and all claims, causes of action, or liability related to stormwater under Section 505 of the CWA, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, or any other claim or relief (a) relating to or resulting from noncompliance with the CWA occurring prior to the Effective Date, and (b) for any past violations of the CWA at the Facility alleged, or that could have been alleged in the Complaint.  This Paragraph does not constitute a waiver or release of any claims relating to the enforcement of this Decree.

32. **Reservation.**  Sierra Club does not waive its right to bring a future action for injunctive or declaratory relief, penalties, and attorneys' fees and costs based on stormwater discharges that occur after the Term of this Decree.

33. **Defendants' Releases of Liability.**  Defendants release and discharge Sierra Club and its representatives, assigns, agents, employees, officers, attorneys and consultants, including those who have held positions in the past, from any and all claims, liability, demands, penalties, costs, and causes of action of every nature which concern or are connected with this action.

34. **Compliance with Law.**  Sierra Club does not by consent to the Decree warrant or aver in any manner that Defendants' compliance with this Decree shall constitute or result in compliance with federal or state law or regulation.  Nothing in this Decree shall be construed to affect or limit in any way the obligations of Defendants to comply with all federal, state, and local laws and regulations governing any activity required by this Decree.

35. **Impossibility of Performance.**  Where implementation of the actions set forth in this Decree within the agreed deadlines becomes impossible, despite the timely and good faith efforts of the Parties, the Party who is unable to comply shall notify the others in writing within five (5) business days of the date that the impossibility becomes apparent and shall describe the reason for the non-performance.  The Parties agree to meet and confer in good faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely and good faith efforts of one of the Parties, new performance deadlines shall be established.  If the Parties cannot timely agree upon the terms of such a stipulation, either shall have the right to seek intervention of the Court under the procedure set forth in Section X.

## VIII.   FEDERAL REVIEW OF DECREE

36. **Review by Agencies.**  The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Decree by the Agencies. Therefore, upon the signing of this Decree by the Parties, Sierra Club shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5. If, for any reason, the Agencies should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith to cure any objection to entry of this Decree raised by the Agencies.

37. **Entry of Order.**  Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), the Parties shall move the Court for entry of this Decree. This Decree shall take effect on the date it is entered by this Court and shall terminate at the end of the Term, as defined in Paragraph 2 of this Decree . If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith to cure any objection raised by the Court to entry of this Decree.

## IX.    MODIFICATION AND ENFORCEMENT OF DECREE

38. **Modification in Writing.**  This Decree may be modified only upon written consent of the Parties and the approval of the Court.

39. **Continuing Jurisdiction of the Court.** The United States District Court for the Eastern District of New York shall retain and shall have jurisdiction over the Parties to this Decree for the resolution of any disputes that may arise under this Decree. This Court shall also allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Decree.

## X.     DISPUTE RESOLUTION PROCEDURE

40. **Meet and Confer.**  Any disputes with respect to any of the provisions of this Amended Consent Decree shall be, in the first instance, the subject of informal negotiations between the Parties affected by the dispute to attempt to resolve such dispute.

41. **Motion.**  If a dispute between the Parties cannot be resolved by informal negotiations within thirty (30) days, a Party may file a motion with the Court seeking resolution of the dispute. The motion shall set forth the nature of the dispute and a proposal for its resolution. The other Party shall have thirty (30) days to respond to the motion and propose an alternate resolution.

42. **Notice.**  The moving Party shall provide the other Party with at least seventy-two (72) hours written notice prior to initiating court proceedings to enforce this Decree.

43. **Fee Awards.**  In resolving any dispute arising from this Agreement, the Court shall have discretion to award attorneys' fees and costs.  The relevant provisions of the CWA and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the Court.

## XI.   MISCELLANEOUS PROVISIONS

44. **Entire Agreement.** This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements, and understandings, whether oral or written, among the Parties.

45. **Notices.** Any notice, demand, copies of documents, or other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing.  Notices shall be directed to the Parties at their respective addresses set forth below.  Notices given in the foregoing manner shall be deemed given: (a) if delivered by courier, when actually received or refused by the addressee; (b) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs; or (c) if e-mailed, when acknowledged by the addressee.  Each Party shall promptly notify the other Party of any change in this contact information, including but not limited to a change in representation.

| Notices for Sierra Club shall be sent to: | Notice for all Defendants shall be sent to: |
|---|---|
| Edan Rotenberg<br>edan@superlawgroup.com<br>and<br>Julia Muench<br>julia@superlawgroup.com | Mark A. Cuthbertson<br>mcuthbertson@cuthbertsonlaw.com<br>and<br>Matthew DeLuca<br>mdeluca@cuthbertsonlaw.com |
| Super Law Group, LLC<br>222 Broadway, 22nd Floor<br>New York, NY 10038 | Law Offices of Mark A. Cuthbertson<br>434 New York Avenue,<br>Huntington, New York 11743 |
| Notices sent to the individuals listed above at the address listed above shall be deemed as notice to Plaintiff. | Thomas Bettua<br>tbettua@nicolock.com |
| | Maryann Ashworth<br>mashworth@pwgrosser.com |
| | Notices sent to the individual listed above at the address listed above shall be deemed as notice to all Defendants. |

46. **Publicity.**  Any public statement made by Defendants in any press release, in any oral or written material promoting Defendants' environmental or charitable practices or record,

or in Defendants' Annual Reports, that refers to Defendants' payments, obligations, or improvements to practices, equipment, or Facilities under this Decree shall state that the payments, purchases, changes, improvements, or similar "were made pursuant to the settlement of a Clean Water Act enforcement suit brought by Sierra Club."

47. **Authorization.** Each person signing this Decree represents and warrants that they have been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

48. **Successors and Assigns.** This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

49. **Transfer of Ownership.** Defendants shall notify Sierra Club prior to any transfer of ownership or control of the Facility to a non-Party. Defendants agree that as a condition of transfer of ownership or control of the Facility, the new owner or operator shall be informed in writing of this Decree and of its requirements to comply with the CWA.

50. **Interpretation.** The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Decree were negotiated at arm's length by the Parties hereto. The language in all parts of this Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, CWA or specifically herein.

51. **Headings.** The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

52. **Counterparts.** This Decree may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. The Parties authorize each other to detach and combine original signature pages and consolidate them into a single identical original. Any one of such completely executed counterparts shall be sufficient proof of this Decree. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this Decree. Copies of the original Decree, whether transmitted by facsimile or other means, shall be effective.

53. **Severability.** In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

54. **Joint and Several Liability.** Defendants are jointly and severally liable for all payments required under this Decree.

14

55. **Changes to the General Permit.** Defendants will comply fully with the General Permit and any permit modification, individual permit, or General Permit reissuance applicable to the Facility during the Term of this Decree.  If new or revised benchmark monitoring cutoff concentrations or effluent limitations (numeric or non-numeric) become applicable, compliance with them is required and any exceedance of a new or modified benchmark monitoring cutoff concentration or effluent limitation will have the same effect as any exceedance of an existing benchmark monitoring cutoff concentration or effluent limitation.

## XII.   ATTACHMENTS

56. The following Attachments are attached to this Decree and made a part hereof:

    a.  Exhibit A:  SWPPP for Facility A
    b.  Exhibit B:  SWPPP for Facility B
    c.  Exhibit C:  SWPPP for Facility C
    d.  Exhibit D:  Payments held in escrow by Defendants' attorney
    e.  Exhibit E:  Schedule

Dated: February 6, 2023

Nicolia Ready Mix, Inc.

By: Mark A. Cuthbertson
Title: Attorney for Defendants

Dated: February 6, 2023

Nicolia Concrete Products, Inc.

By: Mark A. Cuthbertson
Title: Attorney for Defendants

Dated: February 6, 2023

Nicolock Paving Stones, LLC

By: Mark A. Cuthbertson
Title: Attorney for Defendants

Dated: February 6, 2023

Robert L. Nicolia

By: Mark A. Cuthbertson
Title: Attorney for Defendants


Dated: _____

Sierra Club, Inc.


By:
Title:


ENTERED and DATED this ___ day of _____, 2020


Honorable _____
United States District Judge

16

Dated: _____          Robert L. Nicolia


                                          _____
                                          By:
                                          Title:


Dated: __January 31, 2023___             Sierra Club, Inc.

                                          By: Julia Muench
                                          Title:  Associate Attorney, Super Law Group
                                                  Attorneys for Sierra Club, Inc.

ENTERED and DATED this 30th day of March, 2020

                              /s/Gary R. Brown

                              Honorable Gary R. Brown
                              United States District Judge

16